UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **GLENN & JOLYNN BRAGG** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **VS.** | ) | **Civil Action No.  SA-06-CV-1129-XR** |
| | ) | |
| **EDWARDS AQUIFER AUTHORITY,** *et* | ) | |
| *al.* | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

After extensive briefing and a lengthy oral hearing, the Court has thoroughly reviewed the arguments of counsel, the facts of the case, and the applicable law. Having done so, the Court now rules on the submitted motions as follows: Defendants' Motion to Dismiss Plaintiffs' Claims under 42 U.S.C. §§ 1983 & 1988 as Those Claims Pertain to Plaintiffs' "D'Hanis" Application (Docket No. 3) is GRANTED; Defendants' Motion to Dismiss Plaintiffs' Claims under 42 U.S.C. §§ 1983 & 1988 (Docket No. 43) is GRANTED in part and DENIED in part; Plaintiffs' Motion for Leave to File Second Amended Complaint (Docket No. 55) is GRANTED; and Plaintiffs' Motion for Protective Order (Docket No. 69) is GRANTED.

**Facts and Procedural Background**

Plaintiffs Glenn and Jolynn Bragg own two pecan orchards in Medina County, Texas. The first orchard is located just north of Hondo, Texas and is referred to as "the Home Place Orchard." Purchased by the Braggs in 1979, the Home Place Orchard consists of 60.81 acres and is comprised of a commercial pecan orchard, the Braggs' home, and pecan processing facilities. The second

orchard, purchased in 1983, is located three miles north of D'Hanis, Texas and is styled "the D'Hanis Orchard." It consists of 42.1662 acres and is used exclusively for growing pecans. Both orchards reside atop the Edwards Aquifer (Aquifer).

In 1993, the Texas Legislature enacted the Edwards Aquifer Authority Act (EAA Act), which established a new regulatory system to govern use of groundwater from the Aquifer and created the Edwards Aquifer Authority (EAA) to administer it. The EAA Act established a historical preference for users who withdrew groundwater from the Aquifer between June 1, 1972 and May 31, 1993. According to the enabling legislation, existing users had until March 1, 1994 to file a declaration of historical use with the EAA.

The EAA Act did not go into effect as originally scheduled, however, because of constitutional challenges brought against it. The Texas Supreme Court resolved these issues in favor of the Act in *Barshop v. Medina County Underground Water Conservation District*, 925 S.W.2d 618 (Tex. 1996). By the time the *Barshop* ruling came down, the March 1, 1994 deadline had passed, so the EAA set a new deadline of December 30, 1996 for filing historical use declarations. Accordingly, the Plaintiffs filed applications for the D'Hanis Orchard and the Home Place Orchard on December 27, 1996.[1]

After reviewing Plaintiffs' applications for their two orchards, the EAA's General Manager recommended a full denial of the D'Hanis application and a partial denial of the Home Place application. Pursuant to these recommendations, Plaintiffs filed suit on July 28, 1998 against the

---

[1] The Plaintiffs began using water from the Aquifer on the Home Place Orchard in 1979. At the D'Hanis Orchard, the Plaintiffs commenced drawing Aquifer water in February 1995, pursuant to authorization granted by the Medina County Groundwater Conservation District, whom Plaintiffs contend was the only regulatory authority in operation at the time. Prior to this, Plaintiffs state they relied on shallower wells for irrigating the D'Hanis Orchard.

EAA under the Texas Private Real Property Rights Preservation Act (Property Rights Act), alleging the EAA failed to prepare Takings Impact Assessments. The Texas Supreme Court ultimately resolved this litigation in the EAA's favor in *Bragg v. Edwards Aquifer Auth.*, 71 S.W.3d 729 (Tex. 2002).

Around this time, Plaintiffs engaged in two different settlement efforts (Settlement Negotiations) that the EAA allegedly thwarted, "showing special animus toward the Braggs (in likely response to their Property Rights Act case)."[2] As averred in the First Amended Complaint, on two separate occasions, third parties with available water offered to share their water with the Plaintiffs, subject only to the consent of the EAA, which did not come.

The first settlement attempt occurred in October 2001 when Living Water Springs, Ltd. offered to transfer water permit rights to the Plaintiffs in exchange for the Plaintiffs' dismissal of their Property Rights Act suit against the EAA. Although Plaintiffs contend the agreement would have freed the EAA from the then pending suit and from the takings and civil rights claims pled in the current action, the EAA refused to approve the agreement.

The second settlement attempt took place in 2002 between Plaintiffs and the San Antonio Water System (SAWS). According to Plaintiffs, SAWS offered to transfer some of its irrigation water rights to them in exchange for a release of claims against the EAA similar to the one proffered in the first settlement offer. The Plaintiffs allege the EAA rejected this second offer as well.

On September 21, 2004, the EAA issued a final order completely denying the Plaintiffs' D'Hanis Orchard application (D'Hanis Decision) on the basis that the Aquifer well had been drilled outside the historic use period. On February 8, 2005, the EAA partially granted the Home Place

---

[2] Plaintiffs' First Amended Complaint, at 6.

Orchard application (Home Place Decision), permitting Plaintiffs less access to the Aquifer than they had requested.

On November 21, 2006, Plaintiffs filed suit against the EAA, pleading takings claims under Article I, § 17 of the Texas Constitution and Equal Protection and Due Process claims under 42 U.S.C. § 1983. After Defendants removed the case to federal court on the grounds of federal question jurisdiction, Plaintiffs filed a First Amended Complaint, averring additional § 1983 claims arising from the Settlement Negotiations and from the EAA's treatment of Plaintiffs after the Home Place Decision.[3]

## Legal Analysis

Legal Standard for Considering Defendants' Motions to Dismiss

In evaluating the Braggs' First Amended Complaint for purposes of the Defendants' motions to dismiss, the Court must "accept the facts alleged in the complaint as true and construe the allegations in the light most favorable to the plaintiffs."[4]

**Defendants' First Motion to Dismiss - the D'Hanis Decision**

The briefings on this motion raise two principal issues. First, what is the applicable statute of limitations period? Second, if the applicable statute of limitations period is two years, when did the limitations begin to accrue?

Applicable Statute of Limitations Period

Defendants argue the limitations period for § 1983 claims in Texas is governed by the state's

---

[3] The parties have given the post-Home Place Decision claims the appellation of Home Place Permit claims.

[4] Abrams v. Baker Hughes, Inc., 292 F.3d 424, 430 (5th Cir. 2002).

general personal injury statute of limitations, which provides a limitations period of two years. Plaintiffs, however, assert the Court should apply the most closely analogous state law limitations period to determine which time period applies to the §1983 claims raised in this case. Accordingly, Plaintiffs urge the Court to adopt either the limitations period for takings claims (ten years)[5] or for actions taken by a groundwater district (three years),[6] as those causes of action more closely resemble the types of Equal Protection and Due Process claims alleged in this case.

Case law, both from the Supreme Court and the Fifth Circuit, better supports Defendants' position. In *Owens v. Okure*, the Supreme Court stated that "we expressly rejected the practice of drawing narrow analogies between § 1983 claims and state causes of action."[7] The Court went on to say, "because the § 1983 remedy is one that can override certain kinds of state laws, and is, in all events, supplementary to any remedy any State might have, it can have no precise counterpart in state law."[8] Therefore, "where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions."[9]

According to the Fifth Circuit, the pertinent limitations period in Texas for § 1983 claims "is two years from the day the cause of action accrues."[10] In an attempt to show otherwise, Plaintiffs

---

[5] TEX. CIV. PRAC. AND REM. CODE § 16.026(a).

[6] TEX. WATER CODE § 36.124(a).

[7] 488 U.S. 235, 248 (1989).

[8] *Id*. (internal citations omitted).

[9] *Id*. at 249-50.

[10] Piotrowski v. City of Houston, 51 F.3d 512, 514, fn. 5 (5th Cir. 1995).

cite a two page, 2004 Fifth Circuit per curiam opinion, which states in passing that federal courts should "apply the state . . . statute governing [the] most analogous cause of action" to the § 1983 claim.[11] The *Drury* court, however, derives this statement from reference to a 1981 Fifth Circuit case that relied on the applicable law before the Supreme Court rendered its 1989 decision in *Owens*.[12] As noted above, the *Owens* Court "expressly rejected the practice of drawing narrow analogies between § 1983 claims and state causes of action . . . in favor of borrow[ing] the general or residual statute for personal injury actions" where, as in Texas, "state law provides multiple statutes of limitations for personal injury actions."[13]

Following this precedent, current law requires § 1983 claims to be brought within the two year statute of limitations window. Thus, with the applicable limitations period set, the question now is, when did the limitations period begin to accrue?

<u>When the Statute of Limitation Began to Accrue</u>

Defendants argue the EAA's complete denial of Plaintiffs' D'Hanis application on September 21, 2004 triggered the running of the limitations period. According to this start time, Plaintiffs were required to file suit by September 21, 2006 in order to meet the limitations deadline. Because Plaintiffs instead filed suit on November 21, 2006, a date outside the two year limitations period, the Defendants argue the suit is time-barred as to the § 1983 claims arising from the EAA's D'Hanis Decision.

Plaintiffs contend that even if the Court applies a two year statute of limitations, the D'Hanis

---

[11] Drury v. U.S. Army Corps of Engineers, 359 F.3d 366, 367 fn. 1 (5th Cir. 2004).

[12] *Owens,* 488 U.S. 235.

[13] *Id*., at 248-50.

Decision should not be time-barred. Their position is that the limitations period began to accrue not on the date the application was denied (September 21, 2004), but on January 1, 2005, the date the EAA's interim authorization expired and Plaintiffs were actually deprived of all beneficial use of the Aquifer.

Referring to the Supreme Court's decision in *Owens*, the Fifth Circuit has remarked:

> Because there is no specified federal statute of limitations for § 1983 suits, federal courts borrow the forum state's general personal injury limitations period. While the limitations period is determined by reference to state law, the standard governing the accrual of a cause of action under § 1983 is determined by federal law. The standard provides that the time for accrual is when the plaintiff knows or has reason to know of the injury which is the basis of the action.[14]

Applying this law to the facts of the present controversy, this Court finds that the two year statute of limitations began to accrue on September 21, 2004 when the EAA notified the Plaintiffs of the full denial of their D'Hanis application. On the day when the EAA gave Plaintiffs notice of the final order completely denying the D'Hanis permit, Plaintiffs knew or had reason to know of their injury. On that date, Plaintiffs learned that their beneficial use of the Aquifer would thenceforth be terminated. Even though Plaintiffs were still permitted through the interim authorization to draw water from the Aquifer through January 1, 2005, the EAA's September 21, 2004 final decision undeniably made them aware of the permanent loss of their right to the Aquifer waters.

The scenario here resembles what the Fifth Circuit confronted in *Burns v. Harris County Bail Bond Board*.[15] On March 10, 1993, Burns' application for the renewal of her bail bond license was denied. The denial did not take effect, however, until her previously granted license expired on

---

[14] Burrell v. Newsome, 883 F.2d 416, 418 (5th Cir. 1989)(internal citations omitted).

[15] 139 F.3d 513 (5th Cir. 1998).

March 21, 1993. Burns brought suit alleging § 1983 claims on March 15, 1995. While Burns acknowledged that the relevant limitations period in Texas for § 1983 claims is two years, she argued that the limitations accrued when her license expired, not when the Bail Bond Board denied her renewal application. The Fifth Circuit disagreed, holding that Burns knew or had reason to know of her injury on the day she received notice that the Board had denied her license renewal, even though her previous license was still operative.

Here, it is clear that Plaintiffs knew or should have known of the Due Process and Equal Protection injuries they allege with respect to the D'Hanis Decision on the date they received notice of the EAA's final decision denying their right to the Aquifer water. Because that date, September 21, 2004, precedes by more than two years the November 21, 2006 date on which Plaintiffs filed this suit, the statute of limitations bars their § 1983 D'Hanis Decision claims.

**Defendants' Second Motion to Dismiss**

Defendants filed a Second Motion to Dismiss, alleging statute of limitations defects, failure to plead and establish an essential element of the § 1983 claims with respect to the official policy or custom of the EAA, failure to state a claim for an Equal Protection violation, and failure to state a claim for a Due Process violation. The Court begins by examining Defendants' statute of limitations arguments and Plaintiffs' responses.

<u>Statute of Limitations - Settlement Negotiations</u>

As noted above, the appropriate statute of limitations period in Texas for § 1983 claims is two years. Plaintiffs' Settlement Negotiations claims arise from two separate settlement efforts that occurred in 2001 and 2002, respectively. Defendants contend that because Plaintiffs failed to bring suit within two years after the termination of these efforts, the § 1983 settlement claims are time-

barred. Plaintiffs respond that the Settlement Negotiations were related to both the D'Hanis Decision and the Home Place Decision. Therefore, the settlement process did not terminate until the EAA issued its final decisions on those applications. Because the Home Place Decision was not rendered until February 2005, the two year statute of limitations had not yet expired when Plaintiffs brought this suit in November 2006.

The central question is, when did the limitations period accrue? Relying on Plaintiffs' pleadings and the related oral hearing, it is evident that the Settlement Negotiations, which appear to only minimally have involved the EAA, terminated before the EAA issued its D'Hanis Decision in September 2004.[16] Because the § 1983 claims connected with that decision are time-barred by the statute of limitations, the Settlement Negotiations, which concluded prior to the issuing of the D'Hanis Decision, are also time-barred.

Plaintiffs' assertion that the negotiations should be treated as ongoing through the Home Place Decision are unavailing for two reasons. First, Plaintiffs' own pleadings articulate the limited, almost involuntary role the EAA played in the proposed settlements. In both the 2001 and 2002 settlement efforts, Plaintiffs first negotiated proposed agreements with other parties before presenting the polished product to the EAA for its approval as a "third party beneficiar[y]."[17] In other words, Plaintiffs do not allege that the EAA approached them about settlement or became involved in the Settlement Negotiations in any way other than through the Plaintiffs' request once a proposed agreement had already been hammered out by the Plaintiffs.

---

[16] In Plaintiffs' Response to the Court's questions posed at the hearing on all pending motions, Plaintiffs suggest the EAA rejected the second and final settlement effort sometime during June 2004.

[17] Plaintiffs' First Amended Complaint, at 6.

Second, once involved, the only role in the negotiations that the Plaintiffs aver the EAA played was to say no to the two pre-packaged offers Plaintiffs made to them. As Plaintiffs state in their First Amended Complaint, "the EAA would only need to consent to the settlement and approve the transfer."[18] After refusing these ready-made offers, Defendants appear to have never counter-offered or given Plaintiffs any indication of a desire to further negotiate. The entire extent of Defendants' engagement in the negotiations was to say no to two offers it never solicited nor followed up on.

Therefore, contrary to Plaintiffs' assertions, the § 1983 claims arising from the 2001 and 2002 settlement efforts ripened before the EAA made its 2005 Home Place Decision, and as a result, are now time-barred by the statute of limitations.

Statute of Limitations - Home Place Permit

The parties have styled as "Home Place Permit" claims the § 1983 claims arising from the application of the EAA's junior/senior rules to the February 8, 2005 permit granted by the EAA for the Plaintiffs' Home Place Orchard. Defendants contend these claims are time-barred because they ripened on February 8, 2005, the date on which the EAA issued its Home Place Decision, and therefore, the date on which Plaintiffs became unmistakably aware that the rules would apply to them. Defendants believe these claims were not pled in Plaintiffs' initial Complaint filed on November 21, 2006, but rather, were raised for the first time in Plaintiffs' First Amended Complaint on April 20, 2007. Moreover, Defendants allege these newly asserted claims do not relate back to the Plaintiffs' November 2006 Complaint. As a result, Defendants argue the two year statute of limitations for § 1983 claims has expired.

---

[18]*Id.*

Plaintiffs, on the other hand, contend that the correct date for the limitations accrual is January 1, 2006, the date on which the Home Place Decision went into effect, and thus, the junior/senior rules became operative as to them. From this date, Plaintiffs' First Amended Complaint falls squarely within the applicable two year limitations time frame.

Alternatively, even if the limitations began to accrue on February 8, 2005, as Defendants assert, Plaintiffs believe the portions of the First Amended Complaint that relate to the Home Place Permit assert "only additional facts, not additional causes of action."[19] Because the claims from the first Complaint undisputedly land within the acceptable statute of limitations time period, the Home Place Permit claims were timely filed.

The Court need not resolve the dispute as to when the limitations period began to accrue because it finds that the Home Place Permit claims relate back to Plaintiffs' first Complaint. According to the Federal Rules, "an amendment of a pleading relates back to the date of the original pleading when . . . the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."[20]

In the Plaintiffs' original pleading, they set forth a series of claims pertaining to the EAA's February 8, 2005 Home Place Decision. In their First Amended Complaint, Plaintiffs plead new claims pertaining to the EAA's application of the junior/senior rules to them, rules that became operative as to the Plaintiffs once the Home Place Decision went into effect. While the Home Place Decision and Home Place Permit claims involve somewhat different legal analyses, it is inescapable that they arise from the same transaction. Expressed another way, but for the EAA's final decision

---

[19] Plaintiffs' Response to Defendants' Second Motion to Dismiss, at 26.

[20] Fed. R. Civ. P. 15(c).

on Plaintiffs' Home Place application, neither the takings and related § 1983 claims asserted in the first Complaint, nor the Home Place Permit claims pled in the First Amended Complaint, would have arisen.

Therefore, both the originally pled Home Place Decision claims and the later pled Home Place Permit claims concern the common transaction surrounding Plaintiffs' application to use groundwater from the Aquifer and the EAA's subsequent February 8, 2005 decision on that application. As these claims arise from a common transaction, the Home Place Permit claims relate back to the original November 21, 2006 Complaint. Because the parties do not dispute that the original Complaint, insofar as it concerns the Home Place Orchard, is not time-barred, the later pled Home Place Permit claims, which relate back to the original Complaint, are also not barred.

<u>Failure to Plead and Establish an Essential Element of the § 1983 Claims with Respect to the Official Policy or Custom of the EAA</u>

Defendants claim that Plaintiffs failed to allege the EAA's Home Place Decision reflects the official policy or custom of the EAA. According to Defendants, the EAA applied, without discretion, the statutory law enacted by the state legislature. As a result, the official policy or custom belongs to the legislature, not the EAA.

In response, Plaintiffs argue that Defendants confuse the law that governs actions of government agents with the law that addresses actions by governmental entities. Because the claims arising from the Home Place Decision concern the EAA's actions, not those of its agents, it is the Plaintiffs' position that they are under no obligation to establish that the EAA's actions reflect an official policy or custom.

The Court finds the pleaded facts clearly evince that Plaintiffs' Home Place Decision claims

arose from decisions by the EAA that reflect the official policy or custom of that governing entity. The EAA is the final policymaker with respect to Aquifer permit decisions, and it was the EAA that issued the February 8, 2005 Home Place Decision. Furthermore, Plaintiffs aver the EAA did have discretion as to how to apply the law governing historic use designations. In ruling on a motion to dismiss, the Court must "accept the facts alleged in the complaint as true and construe the allegations in the light most favorable to the plaintiffs."[21] Applying this standard, the Court finds that the Home Place Decision claims, when construed in the light most favorable to Plaintiffs, survive Defendants' request for a 12(b)(6) dismissal for failing to assert an official policy or custom on the part of the EAA.

Failure to State Claims for an Equal Protection or Due Process Violation

    Defendants contend that Plaintiffs cannot show they were treated differently than similarly situated parties with respect to their Home Place Decision and Home Place Permit Claims. Defendants also urge the Court to find that Plaintiffs have no constitutionally protected interest in the groundwater under the Home Place Orchard. Finally, Defendants attempt to persuade the Court that Plaintiffs cannot establish that the EAA arbitrarily and irrationally infringed on the Plaintiffs' rights with respect to the Home Place Decision and the Home Place Permit.

    In response, Plaintiffs attempt to refute each of Defendants' claims above, going into some detail about the factual basis supporting their Equal Protection and Due Process claims. After reviewing the briefs addressing these remaining challenges to Plaintiffs' § 1983 Home Place Decision and Home Place Permit claims, the Court finds that in ruling on a motion to dismiss, it would not be proper for it to engage in the sort of factually intensive analysis necessary to adjudicate

---

[21] *Abrams*, 292 F.3d at 430.

substantive arguments that go to the merits of Plaintiffs' case. Instead, the Court believes these issues would better be addressed in the context of motions for summary judgment.

**Plaintiffs' Motion for Leave to File Second Amended Complaint**

The Federal Rules state that with respect to a party's motion to amend its pleadings, "leave shall be freely given when justice so requires."[22] With the Rules in mind, and having reviewed the pertinent briefing by Plaintiffs and Defendants, the Court grants Plaintiffs' Motion for Leave to File Second Amended Complaint.[23] Plaintiffs are instructed to electronically file their Second Amended Complaint within seven (7) days of the date this Order is entered.

**Plaintiffs' Motion for Protective Order**

Plaintiffs request that the Court protect its counsel, Mr. Paul Terrill, from Defendants' efforts to depose him. In response, Defendants assert a need to depose Mr. Terrill in order to obtain discoverable information about the Settlement Negotiations that underlie some of the § 1983 claims pled by Plaintiffs.

Because this Court has granted the Defendants' Motion to Dismiss with respect to the claims arising from the Settlement Negotiations, the Court sees no reason why Defendants still need to depose Mr. Terrill. Therefore, Plaintiffs' Motion for Protective Order is granted.[24]

---

[22] Fed. R. Civ. P. 15(a).

[23] It is expected that Plaintiffs' Second Amended Complaint will reflect the rulings issued in this Order.

[24] Plaintiffs' related request for attorneys' fees in the amount of $1,350, raised in Plaintiffs' Reply to Defendants' Response to Motion for Protective Order (Docket No. 74), is DENIED.

-14-

**Conclusion**

Having carefully reviewed the arguments of both parties, the Court rules as follows: Defendants' Motion to Dismiss Plaintiffs' Claims under 42 U.S.C. §§ 1983 & 1988 as Those Claims Pertain to Plaintiffs' "D'Hanis" Application (Docket No. 3) is GRANTED; Defendants' Motion to Dismiss Plaintiffs' Claims under 42 U.S.C. §§ 1983 & 1988 (Docket No. 43) is GRANTED in part and DENIED in part; Plaintiffs' Motion for Leave to File Second Amended Complaint (Docket No. 55) is GRANTED; and Plaintiffs' Motion for Protective Order (Docket No. 69) is GRANTED.

As noted in the Court's Order from August 10, 2007 (Docket No. 68), Defendants must file their response to Plaintiffs' Motion for Partial Summary Judgment within four weeks of the date that this Order is entered.

It is so ORDERED.

SIGNED this 31 day of August, 2007.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE