UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| GLENN & JOLYNN BRAGG | ) |
| | ) |
|     **Plaintiffs,** | ) |
| | ) |
| VS. | )   Civil Action No. SA-06-CV-1129-XR |
| | ) |
| EDWARDS AQUIFER AUTHORITY, *et al.* | ) |
| | ) |
|     **Defendants.** | ) |

**ORDER**

Plaintiffs filed a Motion for Partial Summary Judgment (Docket No. 31), seeking a favorable ruling on their claims arising under Article I, Section 17 of the Texas Constitution. Having reviewed the parties' arguments, along with the relevant case law, the Court DENIES Plaintiffs' motion.

Furthermore, because the Court did not rely on the disputed summary judgment evidence provided by Defendants, Plaintiffs' Objections to Defendants' Summary Judgment Evidence and Motion to Strike (Docket No. 91) is DENIED as moot.

**Facts and Procedural Background**

Plaintiffs Glenn and Jolynn Bragg own a pecan orchard, purchased in 1983, which is located three miles north of D'Hanis, Texas and styled "the D'Hanis Orchard." It consists of 42.1662 acres and is used exclusively for growing pecans. The orchard resides atop the Edwards Aquifer.

In 1993, the Texas Legislature enacted the Edwards Aquifer Authority Act (EAA Act), which established a new regulatory system to govern use of groundwater from the Aquifer and created the Edwards Aquifer Authority (EAA) to administer it. The EAA Act established a historical preference

for users who withdrew groundwater from the Aquifer between June 1, 1972 and May 31, 1993. According to the enabling legislation, existing users had until March 1, 1994 to file a declaration of historical use with the EAA.

The EAA Act did not go into effect as originally scheduled, however, because of constitutional challenges brought against it. The Texas Supreme Court resolved these issues in favor of the Act in *Barshop v. Medina County Underground Water Conservation District*, 925 S.W.2d 618 (Tex. 1996). By the time the *Barshop* ruling came down, the March 1, 1994 deadline had passed, so the EAA set a new deadline of December 30, 1996 for filing historical use declarations. Accordingly, the Plaintiffs filed an application for the D'Hanis Orchard on December 27, 1996.[1]

On September 21, 2004, the EAA issued a final order completely denying the Plaintiffs' D'Hanis Orchard application on the basis that the Aquifer well had been drilled outside the historic use period.

On November 21, 2006, Plaintiffs filed suit against the EAA, pleading takings claims under Article I, Section 17 of the Texas Constitution and Equal Protection and Due Process claims under 42 U.S.C. § 1983. It is the state takings claims that are the subject of this motion.

## Legal Analysis

<u>Summary Judgment Standard</u>

The Federal Rules provide that summary judgment "shall be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as

---

[1] At the D'Hanis Orchard, the Plaintiffs commenced drawing Aquifer water in February 1995, pursuant to authorization granted by the Medina County Groundwater Conservation District, which Plaintiffs contend was the only regulatory authority in operation at the time. Prior to this, Plaintiffs state they relied on shallow wells for irrigating the orchard.

to any material fact and that the movant is entitled to a judgment as a matter of law."[2] The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."[3] Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must present evidence setting forth "specific facts showing a genuine issue for trial."[4]

Assumption - Vested Property Rights

Defendants argue that even assuming Plaintiffs have vested property rights in the portion of the Edwards Aquifer underlying their property, a position Defendants strongly contest, Plaintiffs have failed to establish that they are entitled to judgment as a matter of law on their takings claims. Specifically, Defendants contend neither a physical nor per se regulatory taking took place, and therefore, a genuine issue of material fact exists as to whether a compensable taking has occurred. Because the Court, for the reasons set forth below, agrees with Defendants' takings analysis, it assumes arguendo that Plaintiffs do possess the vested property interests which they allege.

Physical Taking

Plaintiffs allege Defendants' complete denial of their D'Hanis Orchard application for water withdrawal from the Edwards Aquifer is tantamount to a per se physical taking. Plaintiffs rely on Article I, Section 17 of the Texas Constitution, which reads, "No person's property shall be **taken,**

---

[2] FED. R. CIV. P. 56(c).

[3] Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

[4] FED. R. CIV. P. 56(e)(2).

**damaged, or destroyed** for or applied to public use without adequate compensation being made."[5]

In response, Defendants assert that their denial of the D'Hanis Orchard permit merely restricts Plaintiffs from enjoying certain private uses of the Edwards Aquifer. They contend their denial does not involve a physical occupation of or damage to Plaintiff's property.

Plaintiffs reply that Defendants fail to appreciate that Texas constitutional law provides a broader net for what qualifies as a physical taking than does federal constitutional law. While the United States Constitution refers only to property that is "**taken** for public use,"[6] the Texas Constitution includes property that is "**taken, damaged, or destroyed**."[7]

Here, however, of the three possibilities provided for in the Texas Constitution - taking, damaging, or destroying property - the only relevant prong is taking. The government has in no way damaged the Edwards Aquifer water flowing beneath Plaintiffs' orchard or destroyed the water.[8] If the Texas Constitution is implicated, it is because the water has been taken. On that issue, the Texas Constitution reaches no further than does the United States Constitution, and thus, federal constitutional law helps guide the inquiry.[9]

---

[5] Emphasis added.

[6] U.S. CONST. amend. V.

[7] TX. CONST. art. I, § 17.

[8] Plaintiffs argue that their property "interest" has been damaged, and thus, a physical taking has occurred. No damage, however, has occurred to the property. Adopting Plaintiffs' argument would effectively eviscerate the distinction between physical and regulatory takings because anytime property usage is restricted in any form by regulation, a private owner's interest in that property would arguably be damaged to some degree, and thus, according to Plaintiffs, be physically taken. Neither federal nor state case law supports such a radical reshaping of takings jurisprudence.

[9] "Although the Texas takings provision is worded differently than the Takings Clause of the United States Constitution, it has been described as 'comparable.' As a result, Texas courts typically

Turning to federal constitutional law, the Supreme Court has distinguished between physical and regulatory takings. While a governmental appropriation of part of a rooftop in order to provide cable TV access for apartment tenants represents a physical taking,[10] "a government regulation that merely . . . bans certain private uses of a portion of an owner's property, or that forbids the private use of certain airspace, does not."[11] Here, as in *Tahoe-Sierra*, the facts do not "present the classic taking in which the government directly appropriates private property for its own use; instead, the interference with property rights arises from some public program adjusting the benefits and burdens of economic life to promote the common good."[12] Accordingly, if Defendants' actions constitute a taking, they constitute a regulatory, not a physical taking.

Per Se Regulatory Taking

With alleged regulatory takings, the Supreme Court has held that "categorical treatment," as opposed to "ad hoc, factual inquiries," is appropriate "where regulation denies all economically beneficial or productive use of land."[13] For summary judgment purposes, the Court is limited to deciding whether the EAA's alleged regulatory taking qualifies for categorical treatment. In other words, does the EAA's rejection of the D'Hanis Orchard application deny the Plaintiffs all

---

look to federal cases for guidance on the constitutionality of a taking." Rowlett/2000 v. City of Rowlett, 231 S.W.3d 587, 590-1 (Tex. App. 2007).

[10] *See* Loretto v. Teleprompter Manhattan CATV Corp., 458 US 419 (1982).

[11] Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency, 535 US 302, 322-3 (2002).

[12] *Id*. at 324-5.

[13] Lucas v. South Carolina Coastal Council, 505 US 1003, 1015 (1992).

"economically beneficial or productive use of [their] land"?[14]

On this point, the parties dispute what should be the denominator of the equation. Plaintiffs argue the Edwards Aquifer water residing beneath their property should be the denominator, while Defendants counter that the entire D'Hanis Orchard property ought to be considered. Alternatively, Defendants contend that even if only the groundwater - or even just the Edwards Aquifer groundwater - is the denominator, the denial of the D'Hanis Orchard permit still allows for economically viable use of Plaintiffs' affected land.

Even assuming Plaintiffs are correct that the groundwater estate is a divisible, already vested property interest, Plaintiffs' request that such property further be divided into specific geographic sources is insupportable. The Texas laws relied upon by Plaintiffs do not differentiate between water sources, meaning that if a regulatory taking has occurred, Plaintiffs must show how the denial of the D'Hanis Orchard application extinguishes all "economically beneficial or productive use" of the property's groundwater estate.[15] Plaintiffs simply cannot meet this burden, as by their own admission, they have previously utilized other subsurface water sources to irrigate their land. Furthermore, the EAA Act exempts from the permit requirements Edwards Aquifer water drawn for domestic or livestock uses. In determining whether a land retains economic value, the inquiry is not whether the property owners can profitably pursue any enterprise of their choosing, but rather, as the Texas Supreme Court articulated, whether the regulation "renders the property valueless."[16] In other words, as the Texas Supreme Court also expressed, a finding that an owner has been deprived of all

---

[14] *Id*.

[15] *Id*.

[16] Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 935 (1998).

economically beneficial use of his land is "limited to the extraordinary circumstance when *no productive or economically beneficial use of land is permitted* and the landowner is left with a token interest."[17]

Plaintiffs have presented no evidence establishing they are left with only a token interest, nor could they reasonably do so. The D'Hanis Orchard consists of forty plus acres of land in central Texas, with unencumbered access to non-Aquifer water resources and limited access to the Edwards Aquifer. While the EAA's regulatory actions may well contribute to the economic infeasibility of operating a pecan orchard on the property, an admittedly irrigation intensive commercial pursuit, it does not stand to reason that the denial of the D'Hanis Orchard application results in no economically viable pursuits left available to Plaintiffs on the property.

Accordingly, because the Court does not find that Defendants' actions eliminated all "economically beneficial or productive use of land,"[18] there has not been a categorical regulatory taking for which summary judgment could be granted. Therefore, to find whether a regulatory taking has occurred, the Court must engage in the factually dependent investigation outlined in *Penn Central*,[19] a task inappropriate for this procedural stage.

**Conclusion**

Because the Court finds Plaintiffs have failed to show that Defendants' denial of their D'Hanis Orchard application resulted in a physical taking or a per se regulatory taking, Plaintiffs'

---

[17] Sheffield Development Company, Inc. v. City of Glenn Heights, 140 S.W.3d 660, 671 (2004) (emphasis in original).

[18] *Lucas*, 505 US at 1015.

[19] Penn Central Transportation Company v. City of New York, 438 US 104 (1978).

Motion for Partial Summary Judgment (Docket No. 31) is DENIED. Furthermore, because the Court did not need to rely on the disputed summary judgment evidence proffered by Defendants, Plaintiffs' Objections to Defendants' Summary Judgment Evidence and Motion to Strike (Docket No. 91) is DENIED as moot.

SIGNED this 9th day of January, 2008.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE