## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **GLENN & JOLYNN BRAGG** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **VS.** | ) | **Civil Action No.  SA-06-CV-1129-XR** |
| | ) | |
| **EDWARDS AQUIFER AUTHORITY,** *et al*. | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

Plaintiffs filed a motion for reconsideration (Docket No. 163) of this Court's order granting Defendants' summary judgment motion on Plaintiffs' federal law claims (Docket No. 161). Plaintiffs assert that the Court erred "1) in finding the Braggs had not alleged claims based upon the totality of the EAA's actions that denied them their property interest in the waters of the Edwards Aquifer; 2) in accepting the Defendants' mischaracterizations concerning the EAA's grandfathering rule; and 3) by ignoring the Braggs' malicious or vindictive state action equal protection claims in its analysis."[1]

Having considered Plaintiffs' motion, along with the subsequent response and reply, the Court finds that Plaintiffs have failed to clearly establish that the Court's prior rulings were incorrect. Accordingly, Plaintiffs' motion is DENIED.

---

[1] Docket No. 163 at 3.

**Factual and Procedural Background**

Plaintiffs Glenn and Jolynn Bragg own two pecan orchards in Medina County, Texas. The first orchard is located just north of Hondo, Texas and is referred to as the "Home Place Orchard." Purchased by the Braggs in 1979, the Home Place Orchard consists of 60.81 acres and is comprised of a commercial pecan orchard, the Braggs' home, and pecan processing facilities. The second orchard, purchased in 1983, is located three miles north of D'Hanis, Texas and is styled the "D'Hanis Orchard." It consists of 42.1662 acres and is used exclusively for growing pecans. Both orchards reside atop the Edwards Aquifer (Aquifer).

In 1993, the Texas Legislature enacted the Edwards Aquifer Authority Act (EAA Act), which established a regulatory system to govern use of groundwater from the Aquifer and created the Edwards Aquifer Authority (EAA) to administer it. The EAA Act established a historical preference for users who withdrew groundwater from the Aquifer between June 1, 1972 and May 31, 1993.[2] According to the enabling legislation, existing users had until March 1, 1994 to file a declaration of historical use with the EAA.

The EAA Act did not go into effect as originally scheduled, however, because of constitutional challenges brought against it. The Texas Supreme Court resolved these issues in favor of the Act in *Barshop v. Medina County Underground Water Conservation District*, 925 S.W.2d 618 (Tex. 1996). By the time the *Barshop* ruling came down, the March 1, 1994 deadline had passed, so the EAA set a new deadline of December 30, 1996 for filing historical use declarations. Accordingly,

---

[2] The Plaintiffs began using water from the Aquifer on the Home Place Orchard in 1979. At the D'Hanis Orchard, the Plaintiffs commenced drawing Aquifer water in February 1995, pursuant to authorization granted by the Medina County Groundwater Conservation District, which Plaintiffs contend was the only regulatory authority in operation at the time. Prior to this, Plaintiffs state they relied on shallow, non-Aquifer wells for irrigating the D'Hanis Orchard.

the Plaintiffs timely filed applications for the D'Hanis Orchard and the Home Place Orchard on December 27, 1996.

After reviewing Plaintiffs' applications for the two orchards, the EAA's General Manager recommended a full denial of the D'Hanis application and a partial denial of the Home Place application. Pursuant to these recommendations, Plaintiffs filed suit on July 28, 1998 against the EAA under the Texas Private Real Property Rights Preservation Act (Property Rights Act), alleging the EAA failed to prepare Takings Impact Assessments. The Texas Supreme Court ultimately resolved this litigation in the EAA's favor in *Bragg v. Edwards Aquifer Authority*, 71 S.W.3d 729 (Tex. 2002).

Around this time, Plaintiffs engaged in two settlement efforts (Settlement Negotiations) that the EAA allegedly thwarted, showing "special animus towards the Braggs (in likely response to their Property Rights Act case)."[3] As averred in the Second Amended Complaint, on two separate occasions, third parties with available water offered to share their water with the Plaintiffs, subject only to the consent of the EAA, which did not come.

The first settlement attempt occurred in October 2001 when Living Water Springs, Ltd. offered to transfer water permit rights to the Plaintiffs in exchange for the Plaintiffs' dismissal of their Property Rights Act suit against the EAA. Although Plaintiffs contend the agreement would have freed the EAA from the then pending suit and from the takings and civil rights claims pled in the current action, the EAA refused to approve the agreement.

The second settlement attempt took place in 2002 between Plaintiffs and the San Antonio Water System (SAWS). According to Plaintiffs, SAWS offered to transfer some of its irrigation

---

[3] Docket No. 32 at 6.

water rights to them in exchange for a release of claims against the EAA similar to the one proffered in the first settlement offer. The Plaintiffs allege the EAA rejected this second offer as well.

On September 21, 2004, the EAA issued a final order completely denying the Plaintiffs' D'Hanis Orchard application (D'Hanis Decision) on the basis that the Aquifer well had been drilled outside the historic use period. On February 8, 2005, the EAA partially granted the Home Place Orchard application (Home Place Decision), permitting Plaintiffs less access to the Aquifer than they had requested.

On November 21, 2006, Plaintiffs filed suit against the EAA, pleading takings claims under TEX. CONST. art. I, § 17  and equal protection and due process claims under 42 U.S.C. § 1983. After Defendants removed the case to federal court on the grounds of federal question jurisdiction, Plaintiffs filed a First Amended Complaint, averring additional § 1983 claims arising from the Settlement Negotiations and from the EAA's imposition of junior/senior rules after the Home Place Decision.[4]

On August 31, 2007, this Court entered an order denying in part and granting in part Defendants' motion to dismiss (Docket No. 79). Specifically, the Court dismissed on statute of limitations grounds Plaintiffs' § 1983 claims arising from the D'Hanis Decision and the Settlement Negotiations. The Court did not dismiss, however, Plaintiffs' § 1983 Home Place Decision and Home Place Permit claims.[5]

---

[4] The parties have given these post-Home Place Decision claims the appellation of Home Place Permit claims.

[5] On the issue of whether the Plaintiffs successfully established equal protection and due process bases for their Home Place Decision and Home Place Permit claims, the Court found that given the factually intensive analysis necessary for this inquiry, these issues would best be left for consideration at the summary judgment stage.

Subsequent to the Court's order on Defendants' motion to dismiss, Plaintiffs filed their Second Amended Complaint (Docket No. 80).

Plaintiffs also filed a motion for partial summary judgment alleging that the actions of Defendants in completely denying their D'Hanis Application constituted a per se or categorical taking, entitling them to just compensation under TEX. CONST. art. I, § 17. The Court found, however, that even assuming Plaintiffs had a vested property right in the Aquifer water beneath their property, they did not establish that Defendants committed a per se taking against them by denying them access to that water (Docket No. 128).

Finally, Defendants filed a motion for summary judgment on Plaintiffs' remaining federal law equal protection and due process claims. The Court granted that motion and remanded the pending state law takings claims to state court (Docket No. 161). Plaintiffs now move for reconsideration of portions of that order.

## Legal Analysis

Motion for Reconsideration

 FED. R. CIV. P. 59(e) governs Plaintiffs' motion for reconsideration.[6] A motion to alter or amend judgment under this Rule "must clearly establish either a manifest error of law or fact or must present newly discovered evidence."[7] It "cannot be used to raise arguments which could, and should,

---

[6] Plaintiffs' motion seems to suggest that FED. R. CIV. P. 59(a) should govern, but that provision concerns new trials and is not applicable here. *See* Patin v. Allied Signal, Inc., 77 F.3d 782, 785 n. 1 (5ᵗʰ Cir. 1996) ("The Patins' reconsideration motion was styled as a motion for new trial, pursuant to FED. R. CIV. P. 59(a), but was correctly analyzed and decided in the district court as a Rule 59(e) motion to reconsider entry of summary judgment.").

[7] Rosenzweig v. Azurix Corp., 332 F.3d 854, 863 (5ᵗʰ Cir. 2003).

have been made before the judgment issued."[8]

Course of Conduct Claim

Plaintiffs contend the Court misunderstood their claim that the EAA's overall course of

conduct resulted in the deprivations of their due process and equal protection rights. According to

Plaintiffs, the Defendants violated these rights by a chain of conduct that included:

> 1) irrational refusal to even acknowledge the Braggs' groundwater rights - let alone
> pay just compensation for their taking; 2) unreasonably, arbitrarily and maliciously
> interfering with two settlements that would have transferred water to the Braggs (at
> no cost to the EAA) to make up for the water taken by the EAA; 3) encouraging the
> Braggs to seek relief from the Texas legislature while twice thwarting those efforts;
> 4) inconsistently and arbitrarily applying the EAA Act's historic use period; and, 5)
> depriving the Braggs of their statutorily-guaranteed "irrigator minimum rights" by the
> imposition of unlawful junior/senior rules.[9]

Plaintiffs argue that the Court failed to consider the allegations listed above in reaching its

conclusion on their claim. The Court, however, did take these allegations into consideration. In so

doing, it found none of them to establish a constitutional wrong. Hence, it stated that "Plaintiffs here

argue that two (or three, five, etc.) rights can make a wrong. In other words, even if nothing

Defendants do is constitutionally impermissible by itself, somehow, when packaged together, these

individually constitutional acts comprise one large constitutional wrong."[10]

With respect to the first allegation, Plaintiffs are essentially arguing that because the EAA

did not agree with their interpretation of the state law takings claim in this case, it acted in an

irrational, indefensible manner. There is no evidence, however, that Defendants have done anything

---

[8] *Id.*

[9] Docket No. 163 at 4.

[10] Docket No. 161 at 21.

other than try and carry out their legislatively mandated responsibilities under the EAA Act. Regardless of whether their legal conclusions on the takings claim ultimately prevail in the remanded state court matter, Plaintiffs have failed to establish that Defendants acted in such an arbitrary and discriminatory manner as to violate their due process and equal protection rights.

As for allegations two through five above, the Court squarely addressed each of those assertions in its summary judgment order, and found none of them to be meritorious.

Plaintiffs have failed to clearly establish that the Court made a manifest error of law on their course of conduct claim. Rather, they have merely re-raised allegations already considered at the summary judgment stage. Accordingly, Plaintiffs' motion for reconsideration of the course of conduct claim is denied.

Equal Protection Claim - Home Place Decision

Plaintiffs assert that the Court reached the wrong conclusion on its claim that they were treated differently than similarly situated landowners because of the EAA's adoption in 1998 of certain grandfather rules. Again, Plaintiffs merely cover the same ground that was considered in the summary judgment briefing. The Court acknowledges that the grandfather rules are confusing. What seems clear, however, is that they only applied to those landowners seeking Aquifer water for domestic or livestock use - in other words, exempt well-users. What also appears clear is that Plaintiffs did not seek exempt status because they knew their commercial needs for the Aquifer water would make them ineligible. Therefore, as stated in the Court's summary judgment order, because the grandfather rules only applied to exempt users who qualified for the domestic or livestock use exceptions, and because Plaintiffs were non exempt-users who did not qualify for these exceptions, Plaintiffs cannot show that they were treated differently than similarly situated persons.

As a result, Plaintiffs' motion for reconsideration of their Home Place Decision equal protection claim is denied.

Alleged Vindictive State Action Equal Protection Claim

Finally, Plaintiffs contend that they pled an equal protection claim for vindictive state action that was independent of their so-styled traditional equal protection claims. Arguing that the Court failed to consider this claim, Plaintiffs' contend the Court's grant of summary judgment as to it was improper.

Defendants strongly contest the assertion that Plaintiffs pled a separate claim for vindictive state action. The only place where such a claim might be found is in ¶ 74 of Plaintiffs' Second Amended Complaint. There, Plaintiffs aver that:

> As described above, the EAA has treated the Braggs differently than similarly situated persons and the EAA's conduct evidences personal vindictiveness and spite wholly unrelated to any legitimate state action. The Braggs' Property Rights Act suit motivated the EAA to do more than unevenly enforce its rules and policy, but in fact to direct totally illegitimate animus toward the Braggs and frustrate their attempts to carry on their livelihood at every turn.[11]

Defendants argue that the above recited portion of Plaintiffs' complaint evidences no distinction between their so-called traditional equal protection claims and their alleged vindictive state action equal protection claim. In response, Plaintiffs attempt to distinguish the two by stating that the traditional equal protection claims concern Defendants' alleged inconsistent application of the historic use period and their application of the junior/senior rules to Plaintiffs. By contrast, the vindictive state action equal protection claim concerns the EAA's actions with respect to Plaintiffs'

---

[11] Docket No. 80 at 17.

potential settlement agreements and their advocacy before the Texas Legislature.[12]

Even assuming that Plaintiffs have pled a separate claim for vindictive state action, which the Court does not believe to be the case,[13] Plaintiffs have failed to create a genuine issue of material fact as to that claim. Regarding the settlement negotiations and legislative advocacy, the Court finds no evidence of spiteful wrongdoing or "totally illegitimate animus"[14] directed toward Plaintiffs on the part of Defendants. Furthermore, the Court already addressed Plaintiffs' allegations as to the settlement negotiations and legislative advocacy in its summary judgment order.[15]

In sum, the Court does not believe that Plaintiffs have pled a vindictive state action claim that is separate from their other equal protection claims. Even if Plaintiffs have pled such a claim, the Court addressed the basis for it in its summary judgment order and found such basis to be without merit. Therefore, Plaintiffs' motion for reconsideration of its vindictive state action equal protection claim is denied.

---

[12] *See* Docket No. 165 at 7-8.

[13] As the Court noted in its summary judgment order, "there is no mention anywhere in the live pleadings of facts or claims pertaining to alleged legislative interference on the part of the EAA. . . While Plaintiffs do plead general equal protection and due process claims, there is nothing in their pleadings which would even hint that they meant to include EAA actions related to legislative processes." (Docket No. 161 at 19).

[14] Docket No. 80 at 17.

[15] *See* Docket No. 161 at 17-20.

**Conclusion**

Because Plaintiffs have failed to meet the burden imposed on them by FED. R. CIV. P. 59(e),

their motion for reconsideration (Docket No. 163) is DENIED.

It is so ORDERED.

SIGNED this 12th day of May, 2008.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE